UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Calyn Vildor,
    Plaintiff(s)

v.

Pilot Travel Centers, LLC
    Defendant(s)

Case No: 8:23-cv-17

**COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff, Calyn Vildor, sues Defendant, Pilot Travel Centers, LLC, as follows:

JURISDICTION, PARTIES, AND VENUE

1. This is an action for damages, declaratory relief, and injunctive relief to redress the deprivation of rights secured by the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("**Title VII**"), and Chapter 760 of the Florida Statutes, the Florida Civil Rights Act ("**FCRA**").

2. Defendant maintains an office for transaction of its customary business in Polk County, Florida,

3. Plaintiff is a resident of Polk County, Florida.

1

4. All of the causes of action alleged accrued in Polk County, Florida during the Plaintiff's employment with Defendant.

5. Therefore, this Court is an appropriate venue for this controversy pursuant to 28 U.S.C. § 1391.

6. Plaintiff is black.

7. Plaintiff is a member of a protected class under Title VII and the FCRA.

8. Defendant is a Delaware limited liability company that operates a chain of "travel centers" (i.e., truck stops/gas stations) across the U.S.

9. Defendant has the requisite number of employees to establish coverage under Title VII and the FCRA (42 U. S. C. §2000(b); Fla. Stat. § 760.02(7)).

10. Defendant, at all times material hereto, was Plaintiff's employer as defined by Title VII and the FCRA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Prior to filing this civil action, Plaintiff timely filed a written charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), which was dual filed with the Florida Commission on Human Relations ("FCHR").

12. The EEOC, which conducts its investigation on its own behalf as well as on behalf of the FCHR pursuant to a work-sharing agreement, did not issue a finding on Plaintiff's charge within 180 days of the filing of said charge.

13. Plaintiff was issued a Notice of Right to Sue dated October 6, 2022. Plaintiff's Notice of Right to Sue is attached as **Exhibit "1".**

14. This suit is filed in accordance with that Notice and within the applicable time limitation.

15. Plaintiff has exhausted all administrative prerequisites and has filed this action within the applicable time period pursuant to the EPA, Title VII, and FCRA.

16. Plaintiff has fulfilled all conditions precedent to this action.

## GENERAL ALLEGATIONS

17. Plaintiff was hired by Defendant in approximately July, 2021.

18. Plaintiff worked as a cashier at Pilot Travel Center Store 471 at 35647 US Hwy 27 N, Haines City, Florida, in Polk County.

19. During her employment, Plaintiff's supervisor, the general manager of the store, made numerous comments demonstrating racial bias and insensitivity towards and about Plaintiff. For example, Plaintiff's supervisor would often tell Plaintiff to "put your white girl voice on," that "your white girl voice will get you to the top," and "stop acting so ghetto." When Plaintiff asked her supervisor if Plaintiff might be able to be a manger one day, her supervisor responded, "Yeah, put your voice on," referring to a "white girl voice."

20. The manager Plaintiff assigned to the store would also demonstrate bias by treating black customers differently than white customers. For example, law enforcement would be contacted when black homeless persons were loitering about the store more often than when white homeless persons were engaged in the same conduct.

21. On or about October 28, 2021, on her way to work, as Plaintiff was pulling onto the premises from the road, she was cut off by a semi also turning onto the premises. Plaintiff had to slam on breaks and activate her horn to avoid an accident.

22. The semi was being driven by a male driver, and carried a female passenger, presumably his wife or partner.

23. After they both pulled into the Defendant's travel center, the female passenger became verbally abusive towards Plaintiff through the window. Plaintiff tried to remain calm.

24. Plaintiff entered the store, greeted Holly, a co-worker, and went to the kitchen area to get breakfast. (She often, as she did this particular morning, arrived early and had breakfast on the premises before her shift.)

25. Shortly thereafter, before having breakfast, Plaintiff returned to public area of the store and encountered the female passenger who had verbally abused her.

26. The female passenger was irate and called Plaintiff a "whore" and at one point said "you need to learn how to drive" and "I'll beat your

5

ass" to Plaintiff. The passenger even threatened to "snatch that blue shit off your head," referring to Plaintiff's hair.

27. Pilot attempts to maintain good, long-term relationships with the trucking companies that use their travel centers.

28. Therefore, if a customer who worked for a trucking company was abusive or otherwise acting inappropriately, it was not uncommon to contact the customer's employer.

29. Therefore, Plaintiff asked the female passenger "who do you drive for, you are acting very unprofessional."

30. During this whole experience, none of the other employees at the store attempted to follow any sort of protocols, assist the Plaintiff, or call the police. They simply left Plaintiff alone to deal with the abusive customer herself.

31. Plaintiff could feel herself become scared and agitated, so she walked out of the store to calm down.

32. The female passenger followed the Plaintiff out of the store and began to yell at the Plaintiff in the parking lot.

33. Again, no one from the store came out to monitor the situation or assist the Plaintiff.

34. In the parking lot, the still-irate passenger pulled a gun out of her purse and said "I'll shoot you, bitch" to the Plaintiff.

35. Eventually, Plaintiff was able to get the passenger to put her gun away and walk back to her truck, but the passenger continued to be verbally abusive. The passenger even mooned the Plaintiff (i.e., exposed her buttocks) on the way back to the truck.

36. Plaintiff then called the police.

37. On information and belief, this was the first contact with law enforcement anyone made during the incident. As far as Plaintiff knows, no one at the store attempted to make contact with police as the passenger was yelling at the Plaintiff, or even as the passenger was pulling a gun on Plaintiff.

38. While the police were talking to the Plaintiff and the other employees, Plaintiff's supervisor jumped to conclusions based on her presumptions and biases concerning Plaintiff's race. She assumed that Plaintiff had pulled a gun on the customer. Even though Plaintiff bravely

standing up to the customer prevented loss of life or other tragedy at the store, Plaintiff's supervisor presumed that Plaintiff had escalated the situation, because Plaintiff's supervisor saw Plaintiff as just an angry black woman, who acted "ghetto," and talked black, and not as a peer.

39. The police arrested and removed the driver of the truck and his passenger.

40. No one at the store ever asked Plaintiff if she was OK or show any compassion whatsoever. At one point, Plaintiff began to cry.

41. Plaintiff asked to speak to "Steve" multiple times. (Plaintiff cannot recall Steve's last name or exact title.) Steve was not physically present but was on the phone speaking with store employees. He had some sort of senior position with Defendant above Plaintiff's supervisor. Steve refused to talk to the Plaintiff, and told her to put whatever she had to say in writing.

42. Plaintiff had already submitted a written statement that morning. Steve was speaking to all the other employees about the incident verbally, but treated Plaintiff differently. Plaintiff was required to only communicate in writing.

43. As part of the ensuing "investigation," at no point did anyone contact Plaintiff to ask her questions, ask for clarification of details in her statement.

44. Plaintiff remained suspended without pay until, on or about Monday December 1, 2021 Plaintiff was formally fired.

45. The Plaintiff has retained the undersigned attorney and agreed to pay a reasonable fee for his services and those of his firm.

## COUNT I – TITLE VII

46. This is a cause of action for conduct in violation of Title VII.

47. Plaintiff restates the allegations of paragraphs 1 through 45, above.

48. Plaintiff was subjected to adverse employment actions by Defendant. In particular, as more fully described above, she was left to deal with a violent customer alone, protocols for dealing with violent customers including contacting law enforcement were not followed, presumptions were made about her conduct in the altercation because of her race, she was not permitted to meaningfully participate in the investigation of the

incident, she was offered no comfort and support, and she was ultimately fired because of the incident.

49. Plaintiff was subjected to these adverse employment actions because of her race and color (black).

50. Plaintiff has suffered damages as a result of Defendant's actions. Her damages include, but are not limited to, lost wages and emotional distress.

51. Defendant's conduct violates Title VII.

## Count II – FCRA

52. This is a cause of action for conduct in violation of the FCRA.

53. Plaintiff restates the allegations of paragraphs 1 through 45, above.

54. Plaintiff was subjected to adverse employment actions by Defendant. In particular, as more fully described above, she was left to deal with a violent customer alone, protocols for dealing with violent customers including contacting law enforcement were not followed, presumptions were made about her conduct in the altercation because of her race, she

was not permitted to meaningfully participate in the investigation of the incident, she was offered no comfort and support, and she was ultimately fired because of the incident.

55. Plaintiff was subjected to these adverse employment actions because of her race and color (black).

56. Plaintiff has suffered damages as a result of Defendant's actions. Her damages include, but are not limited to, lost wages and emotional distress.

57. Defendant's conduct violates the FCRA.

WHEREFORE, Plaintiff demands judgment against Defendant for lost wages, including back pay and front pay in lieu of reinstatement or, alternative, reinstatement, damages for pain, suffering, mental anguish, and emotional distress, reasonable attorney's fees and costs, interest, and such other relief as is just, equitable, and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted January 4, 2023.

/s/ J. Kemp Brinson
J. Kemp Brinson
Fla. Bar No. 752541
Reed Mawhinney & Link
53 Lake Morton Drive, Suite 100
Lakeland, FL 33801
Office: 863-687-1771
Mobile: 863-288-0234
Service emails:
kemp@polklawyer.com
jkbservice@polklawyer.com
Attorney for Plaintiff